# 24-0434-cr(L), 24-0436-cr(CON)

# United States Court of Appeals

*for the*

# Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

JOHN HOTALING,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT
## (REDACTED)

SARAH KUNSTLER
KUNSTLER LAW
*Attorneys for Defendant-Appellant*
315 Flatbush Avenue, Suite 103
Brooklyn, New York 11217
(718) 783-3682

CP COUNSEL PRESS    (800) 4-APPEAL • (332880)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

JURISDICTIONAL STATEMENT ...................................................................... 1

ISSUES FOR REVIEW ....................................................................................... 1

STATEMENT OF THE CASE AND FACTS ........................................................ 1

    Mr. Hotaling's 2007 Case and the Violation of Supervised Release .............. 1

    The 2021 Indictment ........................................................................................ 2

    Events Leading Up to the First Representation Hearing .................................. 3

    Events Leading Up to the Second Representation Hearing ............................. 5

    The Third Representation Hearing and the Lead-Up to the Guilty
    Plea .................................................................................................................... 7

    The Conditional Plea Agreement ..................................................................... 9

    The Guilty Plea ............................................................................................... 13

    The Presentence Report and Guideline Calculation ...................................... 17

    The Parties' Sentencing Submissions ............................................................ 19

    Sentencing ....................................................................................................... 20

    Statement of Reasons ...................................................................................... 23

SUMMARY OF ARGUMENT .......................................................................... 24

ARGUMENT ..................................................................................................... 26

    I.    THE GOVERNMENT BREACHED THE PLEA
        AGREEMENT ...................................................................................... 26

    II.   THE DISTRICT COURT COMMITTED PROCEDURAL
        ERROR ................................................................................................. 32

        a.    The Sentence Is Procedurally Unreasonable Because
            the District Court Failed to Explain Its Calculation of
            the Offense Level ...................................................................... 33

b. The Sentence Is Procedurally Unreasonable Because the District Court Erred in Assessing an Additional Four Points Under U.S.S.G. § 2G2.2(b)(4) ..............................35

c. The Sentence Is Procedurally Unreasonable Because the District Erred in Assessing an Additional Two Points Under U.S.S.G. § 3C1.1.................................................38

d. The District Court Failed to Explain Its Chosen Sentence ....................................................................40

III. THE DISTRICT COURT COMMITTED SUBSTANTIVE ERROR..........................................................................41

CONCLUSION ........................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Gall v. United States,*
  552 U.S. 38 (2007)................................................................. 32, 33

*Santobello v. New York,*
  404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ...................................31

*U.S. v. Bleau,*
  930 F.3d 35 (2d Cir. 2019) ....................................................... 36, 37

*U.S. v. Hotaling,*
  634 F.3d 725 (2d Cir. 2011) ...................................................... 37, 38

*United States v. Aldeen,*
  792 F.3d 247 (2d Cir. 2015) ...................................................... 32-33

*United States v. Blarek,*
  7 F. Supp. 2d 192 (E.D.N.Y.), *aff'd*, 166 F.3d 1202 (2d Cir. 1998) .............42

*United States v. Brody,*
  808 F.2d 944 (2d Cir. 1986) ...........................................................31

*United States v. Cavera,*
  550 F.3d 180 (2d Cir. 2008) ............................................... *passim*

*United States v. Corsentino,*
  685 F.2d 48 (2d Cir. 1982) ...................................................... 31-32

*United States v. Cossey,*
  632 F.3d 82 (2d Cir. 2011) ............................................................32

*United States v. Dorvee,*
  604 F.3d 84 (2d Cir. 2010) ............................................................43

*United States v. Dorvee,*
  616 F.3d 174 (2d Cir. 2010) ..................................................... 32, 41

*United States v. Freeman,*
  578 F.3d 142 (2d Cir. 2009) ...........................................................38

*United States v. Granik,*
  386 F.3d 404 (2d Cir. 2004) .................................................... 28, 29

iii

*United States v. Hoey*,
    508 F.3d 687 (1st Cir. 2007) ........................................................38

*United States v. Jenkins*,
    854 F.3d 181 (2d Cir. 2017) .........................................................41

*United States v. Palladino*,
    347 F.3d 29 (2d Cir. 2003) ...........................................................31

*United States v. Porretta*,
    116 F.3d 296 (7th Cir. 1997) .......................................................29

*United States v. Preacely*,
    628 F.3d 72 (2d Cir. 2010) ...........................................................32

*United States v. Ready*,
    82 F.3d 551 (2d Cir. 1996) .................................................. 26, 27

*United States v. Riera*,
    298 F.3d 128 (2d Cir. 2002) .......................................................26

*United States v. Rigas*,
    583 F.3d 123 ..............................................................................41

*United States v. Samas*,
    561 F.3d 108 (2d Cir. 2009) .......................................................42

*United States v. Singh*,
    877 F.3d 107 (2d Cir. 2017) .......................................................41

*United States v. Smith*,
    949 F.3d 60 (2d Cir. 2020) ...........................................................33

*United States v. Teeter*,
    257 F.3d 14 (1st Cir. 2001) ..........................................................29

*United States v. Tutty*,
    612 F.3d 128 (2d Cir. 2010) .......................................................32

*United States v. Vaval*,
    404 F.3d 144 (2d Cir. 2005) ........................................... 26, 27, 32

*United States v. Williams*,
    510 F.3d 416 (3d Cir. 2007) .......................................................29

*United States v. Wilson*,
    920 F.3d 155 (2d Cir. 2019) .................................................. 26, 27

iv

*United States v. Yemitan*,
    70 F.3d 746 (2d Cir. 1995) ........................................................27

*United States v. Yooho Weon*,
    722 F.3d 583 (4th Cir. 2013) .....................................................29

*Walsh v. Schlecht*,
    429 U.S. 401 (1977)..................................................................27

**Statutes & Other Authorities:**

18 U.S.C. § 1001(a)(3) ......................................................................2

18 U.S.C. § 2250 ...............................................................................2

18 U.S.C. § 2252(A)(5)(b) ............................................................2, 9

18 U.S.C. § 2252A(a)(5)(b) ..........................................................2, 9

18 U.S.C. § 2556(8)(A) .................................................................2, 9

18 U.S.C. § 2556(8)(C) .................................................................2, 9

18 U.S.C. § 3553(a) ...............................................................*passim*

18 U.S.C. § 3553(a)(1) ....................................................................42

18 U.S.C. § 3553(a)(5) ....................................................................43

18 U.S.C. § 3553(a)(6) ....................................................................43

28 U.S.C. § 1291 ...........................................................................1, 7

6A A. Corbin, Contracts § 1499 (1962)..........................................27

6A A. Corbin, Contracts § 1533 (1962)..........................................27

Federal Rule of Criminal Procedure 11(a)(2) ..................................13

U.S.S.G. § 2G2.2(a)(1) ................................................ 11, 15, 17, 34

U.S.S.G. § 2G2.2(b)(2) ............................................... 11, 15, 17, 34

U.S.S.G. § 2G2.2(b)(4) ...........................................................*passim*

U.S.S.G. § 2G2.2(b)(5) ............................................... 18, 25, 34

U.S.S.G. § 2G2.2(b)(6) ............................................... 11, 15, 17, 34

U.S.S.G. § 2G2.2(b)(7)(A)........................................... 11, 15, 17, 34

U.S.S.G. § 3C1.1 ..................................................................................... *passim*

U.S.S.G. § 3E1.1(a) ............................................................................... 11

U.S.S.G. § 3E1.1(b) ............................................................................... 11

# JURISDICTIONAL STATEMENT

Appellant John Hotaling, through counsel, filed notice of appeal docketed on February 13, 2024, in the United States District Court for the Northern District of New York in 21-cr-00272 (Suddaby, J.).(A 158.)[1] A second, *pro se* notice of appeal docketed on February 13, 2024, for the judgment on Mr. Hotaling's revocation of supervised release in 07-cr-00580 (Suddaby, J.).(A 158.) Jurisdiction rests on 28 U.S.C. § 1291. Jurisdiction in the district court was asserted by the appellee, the United States of America.

## ISSUES FOR REVIEW

1. Whether the Government Breached the Plea Agreement?

2. Whether the District Court Committed Reversible Procedural Error?

3. Whether the District Court Committed Reversible Substantive Error?

## <u>STATEMENT OF THE CASE AND FACTS</u>

### Mr. Hotaling's 2007 Case and  the Violation of Supervised Release

On September 10, 2009, following a guilty plea, Mr. Hotaling was sentenced by the Honorable Judge Norman A. Mordue, United States District Judge, under docket number 07-cr-00580 in the Northern District of New York to 78 months'

---

[1] Citations to "A #" refer to the Appendix and Appendix page number, citations to "CA #" refer to the Confidential Appendix, and citations to the  "PSR" are to the Presentence Investigation Report.

incarceration to be followed by lifetime supervision for possession of child pornography in violation of 18 U.S.C § 2252(A)(5)(b). (A8.)

On October 23, 2020, Mr. Hotaling appeared to face an alleged violation of the conditions of his supervised release in in 07-cr-00580. According to Probation, October 6, 2020, during a home visit by Probation, Mr. Hotaling was found in possession of a laptop containing pornographic images of children and images depicting sexually explicit conduct. (A125 – A126.)

**The 2021 Indictment**

On August 3, 2021, Mr. Hotaling was charged in an indictment in 21-cr-00272 on charges arising from the same conduct as the supervised release violation, as well as additional conduct. Specifically, he was charged with possession of child pornography in violation of 18 U.S.C §§ 2252A(a)(5)(b), 2556(8)(A) , and 2556(8)(C) (Count One); two counts of failing to register under the Sex Offender Registration and Notification Act ("SORNA") under 18 U.S.C § 2250 for failing to disclose two email addresses (Counts Two and Three); and two counts of making a false statement to Probation by affirming that he maintained only one email address under 18 U.S.C § 1001(a)(3) (Counts Four and Five). (A32 – A36.)

The indictment also contained a prior conviction allegation affecting the penalty provision for Count One. (A34.)

On September 28, 2021, the 2007 violation case was transferred from Judge Mordue to Judge Glenn T. Suddaby, so Mr. Hotaling could face both the violation and the new indictment before the same district court. (A11; Dkt. No. 98.)

**Events Leading Up to the First Representation Hearing**

On February 1, 2022, the district court docketed a text order acknowledging the receipt of a *pro se* letter from Mr. Hotaling dated January 18, 2022, which it "liberally constru[ed]" as a motion to change counsel, which it denied without prejudice "as unsupported by a showing of cause." (A21; Dkt. No. 16.) The court ordered defense counsel to file a status report within seven days of the order responding to "the communication issue raised by Defendant." (*Id.*) The letter from Mr. Hotaling was filed on the docket as a sealed document. (A21; Dkt. No. 17.) On February 7, 2022, defense lawyer Gene Primomo filed a response under seal. (A21; Dkt. No. 18.)

On February 10, 2022, the district court filed another text order acknowledging receipt of Assistant Federal Public Defender Gene V. Primomo's letter of February 7, 2022, "and the change of defense counsel (apparently with the consent of Defendant) from Attorney Primomo to Assistant Federal Public Defender Michael P. McGeown-Walker." (A21; Dkt. No. 19.)

In a *pro se* letter dated March 10, 2022, which was docketed on March 14, 2022, Mr. Hotaling stated that while he had met with Mr. Primomo and Mr.

McGeown-Walker, he did "not consent to anything". (A37-A40.) While he remained "leary" (sic) of being represented by the Federal Defenders office, he stated that Mr. McGeown-Walker had been responsive to his requests and the was willing to give the office some leeway. (*Id.*)

On September 19, 2022, Mr. McGeown-Walker filed a letter informing the court that Mr. Hotaling had requested new counsel and requesting an *ex parte* representation hearing so that Mr. Hotaling could be heard. (A41 – A43.)

Mr. Hotaling filed two *pro se* motions dated September 19, 2022, which were docketed on September 23, 2022. (A44 – A49.) In these submissions, Mr. Hotaling made a motion to represent himself, and asked for the opportunity to plead guilty in the violation case and to proceed directly to sentencing in that case.

On October 6, 2022, a representation hearing was held before Magistrate Judge Daniel J. Stewart. At this closed hearing,



. (CA3 – CA4.)

(CA4.)



(CA5 – CA7.)

(CA8 – CA10.)

On October 7, 2022, via text order on the docket, Magistrate Judge Stewart appointed attorney Mark Sacco to represent Mr. Hotaling in place of the Federal Defenders office. (A22; Dkt. No. 32.)

**Events Leading Up to the Second Representation Hearing**

On November 18, 2022, the district court docketed a *pro se* letter from Mr. Hotaling dated November 14, 2022, which asked the court clerk to issue subpoenas for Appellant's medical records. (A50-53.)[2] On December 12, 2023, the district court issued a text order denying the request without prejudice, and reminding Appellant that he was represented by counsel and that requests must come through his lawyer. (A22; Dkt. No. 36.)

On March 23, 2023, the district court docketed a *pro se* motion to dismiss, dated March 20, 2023, in which Appellant argued (1) that his indictment on the same

---

[2] The same letter was filed on the 2007 docket as Dkt. No. 107 (A12.)

grounds as his violation of supervised release was double jeopardy; (2) that the two counts for failure to register under SORNA (Counts Two and Three) and two counts for making a false statement (Counts Four and Five) were impermissibly based on his exercise of his Fifth Amendment right not to incriminate himself, and that his Sixth Amendment speedy trial rights had been violated. (A55 – A63.) Attached to this motion was a "Notice of Intent to Claim an Affirmative Defense." [3] (A64 – A78.)

On March 27, 2023, the court docketed Mr. Hotaling's *pro se* letter, dated March 23, 2023, on both dockets.  (A23; Dkt. No. 40.)  In this letter, Mr. Hotaling stated that he was no longer represented by counsel and requested permission to proceed *pro se* with the motion he had previously filed. (*Id*.)

On April 6, 2023, a second representation hearing was held. At that hearing, Mr. Hotaling, through counsel, told the court that he wanted the court to review his *pro se* motions and render a decision, and that following the court's decision, Mr. Hotaling would confer with counsel on the next step. (A162 – A169.)

On April 12, 2023, the district court issued a text order on both dockets. The court granted Mr. Hotaling's request to proceed *pro se* on the motion and denied the motion to dismiss the Indictment as "unsupported by a showing of cause." (A23; Dkt. No. 42.)  The court found that no violation of his Fifth Amendment right against

---

[3] A similar motion to dismiss the violation specifications was filed on the 2007 docket as Dkt. No. 107 (A12.)

being placed in double jeopardy or right against self-incrimination and no violation of his Sixth Amendment speedy trial right. (*Id.*)

On April 24, 2023, the court docketed a *pro se* letter from Mr. Hotaling dated April 18, 2023, on both dockets, requesting copies of the district courts orders dismissing his motions to dismiss in both cases. (A83 – A84.)[4]

On April 27, 2023, the district court docketed a *pro se* interlocutory appeal filed by Mr. Hotaling based on the court's April 12, 2023, decision. (A85 – A87.)[5] These appeals were subsequently dismissed when this Court determined that it lacked jurisdiction because a final order has not been issued by the district court as contemplated by 28 U.S.C. § 1291. (A28; Dkt. No. 92.)

On May 19, 2023, Mr. Hotaling filed a letter motion in the 2021 case requesting to stay the proceedings until the conclusion of the appeal, which was denied in a text order on the docket on June 5, 2023. (A88 – A89.)

**The Third Representation Hearing and the Lead-Up to the Guilty Plea**

On June 15, 2023, the district court docketed a text order stating that the trial would begin on August 15, 2023. (A24 – A25; Dkt. No. 54.) The government and defense counsel made pre-trial submissions, including proposed jury instructions, exhibit list, witness lists, and trial briefs. (A25 – A26; Dkt. Nos. 57 – 73.)

---

[4] The letter was filed on the 2007 docket as Dkt. No. 112 (A13).
[5] The interlocutory appeal was filed on the 2007 docket as Dkt. No. 113 (A13).

On July 28, 2023, Mr. Hotaling filed a letter requesting new counsel, which was filed under seal. (A26; Dkt. No. 75.)[6]

On August 9, 2023, one week before trial was set to begin, a third representation hearing was held by video. The court denied Mr. Hotaling's request to represent himself and held a final pre-trial conference. (A170 – A195.)  The parties briefly discussed an evidence spoliation issue that was to be addressed in further filings. (A182 – A183.)

On August 10, 2023, a superseding indictment was filed that was substantially similar to the original but expanded the time frame for Count One. (A90 – A94.)

On August 11, 2023, Mr. Hotaling, through counsel, filed a motion to dismiss the indictment based on the spoliation of evidence. (A95 – A97.)  Specifically, counsel argued that on August 4, 2023, the government notified the defense that an LG cell phone that had been seized by the probation department at the time of the defendant's arrest had been destroyed. Counsel argued that the cell phone was directly or indirectly related to all of the charges in the case and that the indictment must be dismissed based on spoliation of the evidence. (*Id.*)  The government filed an opposition in response the same day. (A98 – A101.)

Three days later, Mr. Hotaling pleaded guilty pursuant to a conditional plea agreement.

---

[6] The letter was also filed on the 2007 docket as Dkt. No. 117 (A13).

**The Conditional Plea Agreement**

Under the terms of the conditional plea agreement, Mr. Hotaling agreed to plead guilty to Count One of the Superseding Indictment, charging him with possession of child pornography, in violation of 18 U.S.C § 2252(A)(5)(b). (Plea Agreement ¶ 1(a); A102.)

The plea agreement contained the following recitation of facts, which Mr. Hotaling admitted:

a) On or about September 10, 2009, the defendant was convicted in United States District Court for the Northern District of New York of Possession of Child Pornography, in violation of Chapter 110 of Title 18, United States Code, that is, Sections 2252A(a)(5)(B), 2256(8)(A), and 2256(8)(C). The defendant admitted that he created and possessed sexually explicit images of six minor females that had been digitally altered by a process referred to as "morphing," where the defendant cut the faces of the minor females from non-pornographic photographs and superimposed those faces onto images of nude adult females engaged in sexually explicit conduct.

b) As a result of that conviction, the defendant was sentenced to 78 months imprisonment followed by lifetime supervised release.

c) On November 21, 2014, the defendant was released from the custody of the Bureau of Prisons and immediately began his term of supervised release.

d) On October 6, 2022, a United States Probation officer conducted an unannounced home visit at the defendant's residence in Schoharie County. Inside of his residence, the defendant possessed an ASUS R420M computer, bearing serial number KAN0CV12H98943C (the "laptop"), which was assembled in China. The defendant admitted to his

9

probation officer that he did not obtain prior approval from probation to possess the laptop as required by his conditions of supervised release.

e) On the laptop, the defendant knowingly possessed an image file depicting an approximately 10-year-old female child holding the penis of an adult male in her hand and approximately 14 morphed images of child pornography wherein the defendant superimposed the faces of actual minor children taken from non-pornographic images onto images of adult bodies which were engaged in sexually explicit conduct, including:

(1) An image file depicting the face of Identified Victim I ("IV1"), a then approximately 17-year-old female, superimposed onto the body of an adult female who is depicted laying on a bed with her legs spread apart, lasciviously exposing her naked vagina.

(2) An image file depicting the face of Identified Victim 2 ("IV2"), a then approximately 11-year-old female, superimposed onto the body of an adult female who is depicted with her legs spread apart exposing her vagina which is being penetrated by an adult male's penis.

(3) An image file depicting the face of Identified Victim 2 ("IV2"), a then approximately 11-year-old female, superimposed onto the body of an adult female who is depicted with her legs spread apart lasciviously exposing her vagina.

(4) An image file depicting the face of Unidentified Victim 1 ("UV1"), an approximately six- to eight-year-old female, superimposed onto the body of a nude female exposing her vagina in a lascivious manner.

f) The defendant used the laptop, which was assembled in China, to facilitate the defendant's morphing and possession of child pornography.

(Plea Agreement ¶ 5(a)-(f); A107 – A108.)

Mr. Hotaling agreed that he understood he was facing a minimum term of 10 years' imprisonment and a maximum term of 20 years, a term of supervision of between five years and life and was required to register as a sex offender. (Plea Agreement ¶ 3(a)-(f); A105 – A106.) He further agreed that his conduct satisfied the elements of the offense. (Plea Agreement ¶ 4; A106.)

In a section of the plea agreement entitled "Sentencing Stipulations," the parties stipulated to the following calculation of the offense level:

| Base Offense Level/Guidelines Adjustment | Level |
|---|---|
| Base Offense Level (§ 2G2.2(a)(1)) | 18 |
| Adjustment for pre-pubescent minors (§ 2G2.2(b)(2)) | +2 |
| Adjustment for use of a computer (§ 2G2.2(b)(6)) | +2 |
| Adjustment for between 10 and 150 images (§ 2G2.2(b)(7)(A)) | +2 |
| Adjustment for acceptance of responsibility (§§ 3E1.1(a) and 3E1.1(b)) | -3 |

(Plea Agreement ¶ 6(a)-(f); A108 – A109.)

Several pages later, in a section entitled "Sentencing Guidelines," (Plea Agreement, ¶ E(d)(ii), A113), the agreement abandons the language of stipulation and states that "[a]ny estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court." Inexplicably, this section also switches from a numbered paragraphs to

lettered paragraphs, suggesting that two different agreements were grafted together.

(*See* Plea Agreement, ¶¶ 1-7, from A102 – A110; and ¶¶ A-M, from A111 – A123.)

And in a later paragraph in the lettered section, entitled "Government's Discretion to

Recommend a Sentence" (Plea Agreement, ¶ E(g); A115), the agreement states that

> Unless a stipulation in this agreement explicitly limits the
> government's discretion with respect to its
> recommendations at sentencing, this agreement does not
> prevent the government from urging the sentencing Court
> to find that a particular offense level, criminal history
> category, ground for departure, or guidelines range applies;
> from recommending a specific sentence within the
> applicable guidelines range as determined by the Court or
> as urged by the government; or, if the government deems
> appropriate, recommending that the Court impose a
> sentence above the applicable guidelines range.

(*Id.*)

Finally, toward the end of the agreement, the parties agree that should the

defendant breach the agreement, the government is entitled to a number of remedies,

including the ability "[t]o recommend any sentence the government deems

appropriate, even if such recommendation is at odds with any stipulation in this

agreement." (Plea Agreement, ¶ J(b)(vii); A122.)

The agreement further contained an appellate waiver, waiving Mr. Hotaling's

right to appeal or collaterally attack his conviction, any claim that the statutes to

which he was pleading guilty were unconstitutional, any claim that his conviction did

not fall within the scope of the statute, any sentence to a term of imprisonment of 120

12

months or less, and any fine, term of supervised release, and forfeiture or restitution permitted by law. (Plea Agreement, ¶ 7; A110.)

Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, Mr. Hotaling reserved his right to "have an appellate court review …. whether the filing of a petition to revoke defendant's term of supervised release based, in part, on his commission of new criminal conduct precludes defendant's subsequent federal prosecution for that conduct under the Double Jeopardy Clause of the Fifth Amendment." (A110.) The agreement stipulated that if Hotaling prevailed on this claim, he would "be permitted to withdraw the guilty plea without penalty." (A111.)

**The Guilty Plea**

On August 14, 2023, Mr. Hotaling appeared before United States District Judge Glenn T. Suddaby to plead guilty to the 2021 indictment (21-cr-272) and the violation of supervised release stemming from the 2007 case (07-cr-580). (A196.)

Before accepting Mr. Hotaling's plea, the district court confirmed that he had had an opportunity to review the charges and all aspects of his case with his attorney, and that he understood the rights he was giving up, including the right to plead not guilty, the right to be represented by an attorney at every stage of the proceedings, the right to a speedy and public trial, the presumption of innocence, the right to confront witnesses, the right to compel witnesses to testify, the right to testify on his own behalf, and the right to remain silent. (A197 – A199.)

13

The court further confirmed that Mr. Hotaling understood that pleading guilty was the same as being found guilty by a jury, and that a guilty plea was a waiver of his right against self-incrimination. (A199 – A200.)

Mr. Hotaling was then put under oath, and asked for his plea to Count One, to which he responded "guilty". (A202 – A203.) The court clerk then asked Mr. Hotaling to admit to the forfeiture allegation, which he did. (A203 – A204.)

The court then asked Mr. Hotaling his age (62), his citizenship (U.S.), his level of education (one year of college), the last place he lived (Schoharie County), whether he was married (no) and if he had any children (three). (A205.) The court asked him what kind of work he did (catering), whether he used illegal drugs (no), whether he took prescribed medication (Trazodone for anxiety and water pills), and whether those medications impacted his ability to understand what was going on around him (no). (A206 – A207.). The court further asked whether Mr. Hotaling was under the care of a doctor or a psychiatrist (yes) and if there was any reason why his ability to understand the discussion was impaired in any way (no). (A207.)

The court confirmed that Mr. Hotaling was satisfied with his representation, and that no one had made any promises to him in order to induce him to plead guilty, or forced or threatened him, and that he was pleading guilty freely and voluntarily. (A207 – A208.)

The court turned to what the government's proof would be at trial, which the government outlined. (A208 – A211.) The court confirmed with Mr. Hotaling that he had done what the government said he did. (A212.)

The court requested that the government "inform the defendant of any stipulations in your plea agreement relating to the sentencing guidelines" (A212 – A213), to which the government responded as follows:

> The parties agree that the base offense level for Count One is 18, pursuant to [§ 2G2.2(a)(1)]. The parties stipulate that the offense in Count One involved prepubescent minors, resulting in a two-level increase, pursuant to [§ 2G2.2(b)(2)] Parties stipulate that the offense in Count One involved the use of a computer for possession, transmission, receipt or distribution of the images of child pornography, resulting in a two-level increase, pursuant to [§ 2G2.2(b)(6)]. The parties stipulate that the offense in Count One involved at least ten images but fewer than 150 images of child pornography, resulting in a two-level increase, pursuant to [§ 2G2.2(b)(7)(A)]. The plea agreement also contains the standard language calling for a three-level downward adjustment for continued acceptance of responsibility.

(A213.)

At the court's request, the government informed the defendant of the minimum and maximum sentences, the possibility of a fine, the forfeiture requirements, the special assessment, and the requirement that Mr. Hotaling register as a sex offender. (A214.) The government further explained that the adjusted offense level was 21, and that with an estimated criminal history category ("CHC") of IV, Mr. Hotaling was facing

15

an estimated Guidelines range of 57 to 71 months, but a mandatory minimum of 120 months, which was the effective Guideline. (A215.)

The court confirmed that Mr. Hotaling had discussed the Guidelines and how they apply with his attorney and explained that it was required to consider the Guidelines, but that it would not be able to determine what they would be until after Probation prepared its report. The court further explained that it was required to consider the sentencing factors under 18 U.S.C. § 3553(a), which it enumerated. (A215 – A217.)

The government explained that the plea agreement contained a carve out that permitted Mr. Hotaling to argue double jeopardy on appeal, and that if he prevailed, he would be permitted to withdraw his guilty plea without penalty. (A217.) The court confirmed with Mr. Hotaling that that was the only situation in which he would be permitted to withdraw his plea. (A217 – A218.) The court confirmed that Mr. Hotaling otherwise could not appeal or collaterally attack a sentence of 120 months or less. (A219.)

The court raised the pending motion to dismiss, which defense counsel confirmed was being withdrawn on the basis of the guilty plea. (A220.)

After asking questions of Mr. Hotaling's attorney, the court found that the Appellant was competent to plead and had pleaded guilty knowingly and voluntarily, and that there was a factual basis for his plea. (A220 – A224.)

16

Defense counsel then asked the court if it could also address the pending violation of supervised release, which the court agreed to do. Mr. Hotaling then admitted to the three violations in the amended petition for violation of supervised release: (1) that he possessed a laptop with images of child pornography; (2) that he possessed an unapproved online capable device; and (3), that he possessed a laptop with sexually explicit pictures. (A225 – A229.)

**The Presentence Report and Guideline Calculation**

On January 26, 2024, Probation filed its final Presentence Investigation Report ("PSR"). Probation calculated a significantly higher Guidelines range than the one contemplated by the parties in the plea agreement.

While Probation started with the same base offense level (18) pursuant to U.S.S.G. § 2G2.2(a)(1), and also added two points pursuant to U.S.S.G. § 2G2.2(b)(2) because the material involved a pre-pubescent minor, as well as two points pursuant to U.S.S.G. § 2G2.2(b)(6) for use of a computer and two points U.S.S.G. § 2G2.2(b)(7)(A) for possession of between 10 and 150 images, Probation added two enhancements that the parties had not contemplated.

Specifically, Probation added four points under U.S.S.G. § 2G2.2(b)(4), as it determined ██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████ (PSR ¶ 48.)

Probation further added five points under U.S.S.G. §2G2.2(b)(5) on the

grounds that Appellant █████████████████████████

████████████████████████████

██████████████████████████████████████████

███████████████████████████████ (PSR ¶¶ 41;

49.)

Finally, Probation added an additional two points under U.S.S.G. §3C1.1 for

obstruction of justice, contending that Mr. Hotaling ███████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████ by destroying a USB drive following the initial search of his residence on

October 6, 2020. (PSR ¶¶ 43; 54.)

With these additional enhancements, Probation calculated an adjusted offense

level of 32. Unlike the government, which had estimated a CHC of IV, Probation

calculated a CHC of III.   (PSR ¶ 72.) With an offense level of 32 and a CHC of III,

Probation calculated a Guidelines range of 151-188 months in prison. (PSR ¶ 105.)

**The Parties' Sentencing Submissions**

The government filed its sentencing submission on January 18, 2024. Despite the calculation estimated by the government in its plea agreement, in this submission, the government agreed with Probation's calculation of the Guidelines, arriving at a CHC of III, an adjusted offense level of 32, and an advisory Guidelines range of 151-188 months. (A131.) The government recommended a term of imprisonment within that range. (*Id*.)

In a *pro se* letter dated January 27, 2024, that was filed on the docket on January 31, 2024, Mr. Hotaling requested an adjournment of the sentencing proceeding, explaining that a mailing that he had sent to his attorney, Mark Sacco, which contained his objections to the PSR was returned to sender, and that an adjournment was necessary to ensure that the information in the PSR was correct. (A143 – A147.)

In a submission dated January 31, 2024, Mr. Hotaling, through defense counsel, objected to the additional enhancements calculated by Probation in paragraphs 48, 49, and 54 of the PSR.[7]

Defense counsel noted that since Mr. Hotaling's CHC was III, and not IV as the parties had agreed, the advisory Guidelines range (before the operation of the

---

[7] Appellant objected to the enhancements in paragraphs 48, 49, and 54.(A136.)

mandatory minimum) was actually 46 to 57 months, and not 57 to 71 months. (A135 – A136.)

Defense counsel asked Court to sentence Mr. Hotaling to the mandatory minimum of 120 months. (A141.) Counsel noted that he had received a 15-page document from Appellant in advance of sentencing, which was initially mailed to an old office address, but ultimately forwarded to the right address. (A136.) Counsel wrote that "after reading the document, I chose what I believed to be the relevant and useful objections raised by the defendant to best represent him at sentencing. I also decided, for strategic reasons, not to submit the list of objections by the defendant as I determined it would not be in his best interest." (*Id*.)

**Sentencing**

Sentencing went forward as scheduled on February 8, 2024, before the Honorable Glenn J. Suddaby, United States District Judge. (A231.)

At the outset, Mr. Hotaling's counsel confirmed that he had received Mr. Hotaling's objections to the presentence report and was able to address them in his sentencing submission. (A232 – A233.)

Counsel reiterated that the objections outlined in his sentencing submission concerning the additional enhancements found by Probation in paragraphs 48, 49, and 54 of the PSR. (A233.)

20

The district court addressed only the objection to paragraph 49, finding that the sexual abuse was proven by a preponderance of the evidence, as there was nothing in the record to indicate that the information provided by the victim was not reliable. The court's full statement with respect to the disputed Guidelines calculation was as follows:

> Yeah. I found and I do find that probation has correctly evaluated that and scored that by a preponderance of the evidence, that that victim who came forward and is now 33 years old talked about sexual abuse that she endured and suffered at the hands of Mr. Hotaling when she was a child visiting his home. There's nothing to indicate that it's not reliable, sound information, and I do find by a preponderance of the evidence that it is reliable in that it should be scored as probation has indicated.

(A233 – A235.)  The district court failed to address counsel's objections to the remaining disputed enhancements.

The government largely rested on its submission, reiterating that a Guidelines sentence was appropriate. (A235 – A 236.)

Defense counsel argued for a sentence of ten years, the mandatory minimum, and a lifetime term of supervision, arguing that for a 63-year-old defendant, a ten year sentence was an "astronomical" amount of time, that Mr. Hotaling would be 73 years old upon release, and that nothing beyond ten years was required to meet the factors under 18 U.S.C. § 3553(a). (A236 – A238.)

Mr. Hotaling did not address the court. (A238.)

21

Accepting Probation's calculation of the Guidelines, the district court found that the total offense level was 32, the CHC was III, and the advisory Guideline imprisonment range was 151 to 188 months. (A238.)

The court found a sentence at the high end of its calculation of the advisory Guidelines range was warranted, noting, among other things, that Mr. Hotaling had committed the instant offense while on supervised release for the same conduct, had tried to hide his continuing conduct from Probation by using unauthorized internet-capable devices he kept hidden from Probation, and had obstructed the government's investigation by destroying an external device that was believed to contain additional files relevant to the investigation, and sentenced Mr. Hotaling to 188 months' incarceration. (A238 – A242.)

The court stated that it was "well aware of the application made by defense counsel with regard to the guidelines calculation and the urging of this defendant that that enhancement should not apply", and stated that because of the continued dangerousness of Mr. Hotaling, that it "would have imposed this exact same sentence regardless of the guideline range and feels that it is completely justified and necessary, sufficient, but not greater than necessary to meet the goals of sentencing outlined in 18 USC Section 3553(a)." (A242 – A243.)

The court further imposed a lifetime term of supervised release and adopted the standard conditions of release and special conditions recommended by Probation

and attached to the presentence report, to which the Appellant did not object. (A243.) The court then explained why the conditions were necessary. (A244 – A247.)  On the government's motion, the court dismissed the outstanding counts. (A248 – A249.)

The court then turned to the violation of supervised release resulting from the 2007 case, imposing a 12-month sentence, the top of the 6-12 months Guidelines range for the violation, to run consecutively to the 188-month sentence on the 2021 case. (A249 – A252.)

**Statement of Reasons**

On the Statement of Reasons, the district court ███████████ ███████████████████████████████████████████████████ ███████████████████████████████ and gave the following reason for the choice of sentence:



(Statement of Reasons, p. 1.)

## SUMMARY OF ARGUMENT

The government breached Mr. Hotaling's plea agreement, in which it stipulated to a base offense level and to the enhancements that would apply at Mr. Hotaling's sentencing, resulting in an advisory Guidelines range of 57 to 71 months,[8] with an effective Guidelines of 120 months because of the mandatory minimum. After Probation did its own calculation of the Guidelines, which, after the imposition of additional enhancements, yielded an advisory Guidelines range of 151-188 months in prison, the government pivoted, abandoning the stipulated Guidelines range to which it had agreed, and advocated for this higher range, in violation of the plea agreement. Where, as here, the government breaches its plea agreement by engaging in sentencing advocacy, the appropriate remedy is specific performance of the plea agreement. Accordingly, we ask this Court to vacate the sentence and remand for resentencing before a different district judge.

The sentence in this case must also be vacated because the district court committed both procedural and substantive errors.

---

[8] As discussed above, this Guidelines range was premised on an anticipated Criminal History Category of IV. Because Mr. Hotaling was properly in Criminal History Category III, the resulting range was actually 46 to 57 months,

24

First, the sentence is procedurally unreasonable because the district court failed to explain its calculation of the offense level. Mr. Hotaling objected to a number of the enhancements calculated by Probation, which, taken together, raised his offense level by 11 points (four points under U.S.S.G. § 2G2.2(b)(4) for sadistic or masochistic conduct, five points under U.S.S.G. §2G2.2(b)(5) for pattern of sexual abuse and two points under U.S.S.G. §3C1.1 for obstruction of justice).

However, the district court only addressed Mr. Hotaling's objection to U.S.S.G. §2G2.2(b)(5), finding that the pattern of sexual abuse was proven by a preponderance of the evidence. The district court's failure to address the other disputed enhancements or make any findings concerning the facts supporting those enhancements, was procedural error, rending Mr. Hotaling's sentence procedurally unreasonable. Second, the sentence is procedurally unreasonable because U.S.S.G. § 2G2.2(b)(4) and U.S.S.G. §3C1.1 were erroneously applied. Third, the sentence is procedurally unreasonable because the court did not do the work required to explain why a sentence substantially above the Guidelines range was necessary.

Finally, the sentence is substantively unreasonable because procedural errors, by which the court artificially (and erroneously) inflated Mr. Hotaling's guidelines range from 46 to 57 months to 151 to 188 months, also render the 188-month sentence Mr. Hotaling received unreasonably harsh and therefore substantively unreasonable.

# ARGUMENT

## I.   THE GOVERNMENT BREACHED THE PLEA AGREEMENT

The Second Circuit "review[s] interpretations of plea agreements de novo and in accordance with principles of contract law." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002).

In keeping with this practice, this Court has held that "[s]everal rules of interpretation, consistent with general contract law principles, are suited to the delicate private and public interests that are implicated in plea agreements." *United States v. Ready*, 82 F.3d 551, 558–59 (2d Cir. 1996)

First, this "construe[s] plea agreements strictly against the government and do[es] not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019). This includes construing any ambiguities in the agreement strictly against the government. *See United States v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996). "[B]ecause plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance." *United States v. Vaval*, 404 F.3d 144, 152-153 (2d Cir. 2005).

Second, this Court "construe[s] the agreement against a general background understanding of legality. That is, we presume that both parties to the plea agreements contemplated that all promises made were legal, and that the non-

contracting 'party' who implements the agreement (the district judge) will act legally in executing the agreement." *Ready*, 82 F.3d at 559. *See also Walsh v. Schlecht*, 429 U.S. 401, 408, (1977) ("Since a general rule of construction presumes the legality and enforceability of contracts, 6A A. Corbin, Contracts §§ 1499, 1533 (1962), ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable.")

Finally, "courts may apply general fairness principles to invalidate particular terms of a plea agreement." *Ready*, 82 F.3d at 559; *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir.1995) ("Plea agreements are subject to the public policy constraints that bear upon the enforcement of other kinds of contracts.").

In determining whether the government breached a plea agreement, this Court looks "to what the parties reasonably understood to be the terms of the agreement." *Vaval*, 404 F.3d at 152; *see also Wilson*, 920 F.3d at 158 (Assessments of "allegations of breached plea agreements depend on what the reasonable understanding and expectations of the defendant were as to the sentence for which he had bargained.").

Here, the plea agreement, as drafted by the government, in a series of numbered paragraphs, contains a Guidelines range calculated under the headline "Sentencing Stipulations" in which it states that the "parties agree[d]" that the base

offense level was 18 and included three enhancements to which the "parties stipulate[d]." (A108 – A109.) This understanding of the plea agreement was confirmed orally by the government at Mr. Hotaling's plea, restating the calculation to which the parties had "agree[d]" and "stipulate[d]".  (A213.)

This language of agreement and stipulation is contradicted by a later section entitled "Sentencing Guidelines," one of series of lettered paragraphs that appeared to be grafted from a different document, which  states that "any estimate of the defendant's offense level, criminal history category, and sentencing guideline's range provided before sentencing is preliminary and is not binding on the parties to this agreement". (A113.) A subsequent lettered paragraph states that unless the government has "explicitly" limited its discretion in a stipulation, it is free to recommend any offense level, guidelines range, or sentence. (A115.)

Despite this internal inconsistency, it cannot be an accident that this plea agreement contained an express agreement and stipulation to how the Guidelines would be applied in this case to calculate Mr. Hotaling's offense level – an understanding that the government confirmed at Mr. Hotaling's plea.  This Circuit, and other Circuits, hold that defendants are bound by their stipulations in a plea agreement. In *United States v. Granik*, 386 F.3d 404 (2d Cir.2004), for example, a case in which a defendant sought to avoid at sentencing the consequences of his plea stipulation of a certain loss amount resulting from his criminal activity, this Court

held that "a stipulation as to the amount of loss in a plea agreement that is knowing and voluntary will generally govern the resolution of that issue," and will bind the parties from contesting the substance of that stipulation. *Id.* at 411–12. This Court further explained that factual stipulations in plea agreements "are bargaining chips in the hands of defendants," and that "[i]f defendants are not held to their factual stipulations ... the government has no reason to make concessions in exchange for them." *Id.* at 412–13. *See also United States v. Teeter*, 257 F.3d 14, 28 (1st Cir.2001) (a court's acceptance of a factual stipulation in a plea agreement "firm[ly]" binds the parties to that stipulation, because "the defendant knows what she has done, and has little cause for complaint if the district court takes her at her word"); *United States v. Williams*, 510 F.3d 416, 422 (3d Cir.2007) ("When a defendant stipulates to a point in a plea agreement, he 'is not in a position to make arguments [to the contrary].' ") (citation omitted); *United States v. Porretta*, 116 F.3d 296, 301 (7th Cir.1997) ("Absent any compelling basis for disregarding the [plea agreement] admissions, they must stand."); *United States v. Yooho Weon*, 722 F.3d 583, 589 (4th Cir. 2013) (affirming a district court decision that defendant was bound by the loss amount to which he stipulated).

The stipulated offense level in the plea agreement must be construed strictly against the government. To the extent that a later paragraph uses the word "estimate", and another includes requirement that any stipulation "explicitly" limit the

29

government's discretion in order to bind it makes the meaning of the word "stipulation" or stipulate" in the "Sentencing Stipulations" paragraph ambiguous, any ambiguity must also be construed against the government.

Having elected to adopt the offense level and Guidelines range calculated by Probation – and to reject range to which the parties stipulated in the plea agreement – the government breached that agreement.

As the government explained at Mr. Hotaling's plea, the parties stipulated to a Guidelines range with an adjusted offense level of 21. (A213.) Because the government estimated Mr. Hotaling's CHC as IV, it estimated that he was facing a Guidelines range of 57 to 71 months but because he faced a mandatory minimum of 120 months, 120 months became the effective Guideline. (A215.)

Once Probation reassessed Mr. Hotaling's CHC as III, and not IV, the government should have decreased its stipulated calculation of 57 to 71 to 46-57 months, with the effective Guideline remaining at the 120-month mandatory minimum. Yet instead of keeping its end of the bargain, the government advocated in its sentencing submission and at Mr. Hotaling's sentencing proceeding for the 151 to 188 month calculation done by Probation incarceration. In advocating for a sentence that was approximately 126 to 156 percent of the stipulated 120-month Guideline, and more than 300 percent higher than the 46-to-57-month range that Mr. Hotaling

would have faced were it not for the mandatory minimum, the government violated the plea agreement.

In general, "[t]he remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement." *United States v. Brody*, 808 F.2d 944, 947 (2d Cir.1986); *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

Where a plea agreement is breached, the choice between the remedies of resentencing or plea withdrawal "is generally a discretionary one guided by the circumstances of each case." *United States v. Palladino*, 347 F.3d 29, 34 (2d Cir.2003) (internal quotation marks and citation omitted). Certainly, where resentencing before another district judge would not cure the "taint[ ]" caused by a government breach—because, for example, the government violated the agreement by introducing new evidence that could not be "magically erased or ignored on remand"—we have held that plea withdrawal was the appropriate remedy. *Id*. at 35. In other cases, where remand to a different judge for resentencing would cure the breach caused by the government, we have ordered that remedy. E.*g., United*

31

*States v. Corsentino*, 685 F.2d 48, 52 (2d Cir.1982) (government violated agreement to take no position at sentencing).

Where, as here, the government breaches its plea agreement by engaging in sentencing advocacy, the appropriate remedy is to vacate the sentence and remand for resentencing before a different district judge. *See Vaval*, 404 F.3d at 156.

## II.    THE DISTRICT COURT COMMITTED PROCEDURAL ERROR

This Court reviews sentences for both procedural error and substantive reasonableness. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*); *United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010).

The Court must first determine whether "the district court committed any significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011); *United States v. Preacely*, 628 F.3d 72 (2d Cir. 2010); *United States v. Tutty*, 612 F.3d 128, 131 (2d Cir. 2010); *Cavera*, 550 F.3d at 190. Where, as here, a defendant does not object at sentencing to a district court's alleged procedural errors, this Court reviews the procedural challenge for plain error. *United States v. Aldeen*, 792 F.3d

247, 253 (2d Cir. 2015), *superseded by statute on other grounds as recognized in United States v. Smith*, 949 F.3d 60, 64 (2d Cir. 2020).

Pursuant to the terms of the parties' plea agreement, Mr. Hotaling agreed to waive his right to appeal and collaterally attack any sentence of imprisonment of 120 months or below.

Because the 188-month sentence imposed by the district court was outside the scope of the waiver under the plain language of the agreement, Appellant retains his right to appeal his sentence.

### a. The Sentence Is Procedurally Unreasonable Because the District Court Failed to Explain It's Calculation of the Offense Level

First, the sentence is procedurally unreasonable because the district court failed to explain its calculation of the offense level.

As this Court has held, the sentencing record must be sufficient for an appellate court to "be confident that the sentence resulted from the district court's considered judgment as to what was necessary to address the various, often conflicting, purposes of sentencing." *U.S. v. Cavera*, 550 F.3d 180, at 189-90 (2d Cir. 2008). Requiring judges to articulate their reasons for a specific sentence "is a precondition for 'meaningful appellate review'" and allows a reviewing court to "have confidence that the district court exercised its discretion and did so on the basis of reasons that survive our limited review." *Cavera*, 550 F.3d at 193 (quoting Gall, 552 U.S. at 50, 128 S.Ct. 586). "Without a sufficient explanation of how the

court below reached the result it did, appellate review of the reasonableness of that judgment may well be impossible." *Id*.

In this case, as discussed above, the parties stipulated, pursuant to a plea agreement, to an offense level of 21. After starting with an offense of 18, pursuant to U.S.S.G. § 2G2.2(a)(1), the parties agreed to three two-point enhancements under U.S.S.G. § 2G2.2(b)(2) (because the material involved a pre-pubescent minor), U.S.S.G. § 2G2.2(b)(6) (for use of a computer) and U.S.S.G. § 2G2.2(b)(7)(A) (for possession of between 10 and 150 images). Probation added four points under U.S.S.G. § 2G2.2(b)(4) on the ground that the offense involved material that portrayed ████████████████████████████ (PSR ¶ 48), five points under U.S.S.G. §2G2.2(b)(5) on the ground that Appellant ████ ████████████████████████████████ (PSR ¶¶ 41; 49), and two points under U.S.S.G. §3C1.1 for obstruction of justice. (PSR ¶¶ 43; 54.)

Mr. Hotaling contested these additional enhancements in his written submission and orally at sentencing. (A136; A233.) However, the district court only addressed Mr. Hotaling's objection to U.S.S.G. §2G2.2(b)(5), finding that the pattern of sexual abuse was proven by a preponderance of the evidence. (A233 – A235.)

The district court's failure to address the other disputed enhancements or make any findings concerning the facts supporting those enhancements, was procedural error, rending Mr. Hotaling's sentence procedurally unreasonable. because the district court failed to adequately explain its chosen sentence.

### b. The Sentence Is Procedurally Unreasonable Because the District Court Erred in Assessing an Additional Four Points Under U.S.S.G. § 2G2.2(b)(4)

Second, the sentence is procedurally unreasonable because the district court erred in accepting Probation's calculation of the Guidelines, which included an additional four points under U.S.S.G. § 2G2.2(b)(4) ████████████████ ████████████████████████████ ████████████████████████████ ████████████████████ (PSR ¶ 48.)

As discussed above, the district court's imposition of these points is unreasonable because it failed to mention this enhancement at sentencing or making any findings regarding its applicability. But even assuming *ex arguendo* that the district court had made the requisite findings, the assessment of this enhancement is procedurally unreasonable.

Here, in calculating the four-point enhancement under U.S.S.G. § 2G2.2(b)(4), Probation cited an image depicting the face of an eleven-year-old female ████████████████████████████

 (PSR ¶

5(e)(ii).) Probation found that ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████ (PSR, p. 19, footnote 6.)

In support of the imposition of this enhancement, Probation wrote in a footnote

that ████████████████████████████████

████████████████████████████████

██████████ and cited this Court's decision in *U.S. v. Bleau*, 930 F.3d 35 (2d Cir. 2019).

(*Id.*) In *Bleau*, the videos possessed by the defendant portrayed "a minor victim

performing sex acts upon herself while using a vibrator and other sex toys." 930 F.3d

at 41. While the district court "could not conclude one way or another whether the

depicted activity would have caused the minor victim to experience physical pain" it

found that the videos depicted a child being "mentally degraded and humiliated and

harmed." *Id*. While the Circuit found it to be a "very close case", it found that it

could not find that the district court's findings were clearly erroneous. *Id*. at 41-42.

*Bleau* may have been a "close case," but this case is not. Unlike *Bleau*, the

image in question in Mr. Hotaling's case did not involve an act performed by – or on

– a minor child, but an act performed by – or on – an adult female. Therefore, no

harm, psychological or physical, was done to the minor child during the performance of the sex act depicted. Further, unlike in *Bleau,* where the defendant had advance notice of the challenged condition and failed to object, resulting in a plain error standard upon appellate review, here, Mr. Hotaling, through his attorney, objected to the imposition of the enhancement, resulting in an abuse of discretion standard.

Probation further cited Mr. Hotaling's appeal of his prior federal conviction, *U.S. v. Hotaling*, 634 F.3d 725 (2d Cir. 2011). In that case, the 2nd Circuit held that the application of the U.S.S.G. §2G2.2(b)(4) sentencing enhancement by the district court "based on a photograph that has been modified to portray a partially nude minor, restrained by handcuffs, a dog collar and leash, tied to a dresser was proper." *Id.* at 726. This Court found that "[n]ot only does this image portray the minor in a situation that would have caused at least some level of pain, it meets the broader definition of 'sadistic conduct' because it  portrays a situation that involves physical and mental cruelty, here in the form of forcible restraint." *Id.* at 731–32.

Here, unlike in the previous *Hotaling* decision, the original image – of an adult female vagina being penetrated by an adult mail penis – does not meet the definition of "sadistic conduct"  or "other depictions of violence". In *Hotaling*, this Court cited Freeman, a case in which this Court found that "if a sentencing court finds that ... an image depicts sexual activity involving a minor and ... the depicted activity would have caused pain to the minor, that court need not make any additional findings in

37

order to impose a four-level enhancement." *United States v. Freeman*, 578 F.3d 142, 146 (2d Cir.2009). The *Hotaling* court further cited *United States v. Hoey*, 508 F.3d 687, 693 (1st Cir.2007) for the proposition that "[a]n image of an identifiable, real child involving sadistic conduct—even if manipulated to portray conduct that was not actually inflicted on that child—is still harmful, and the amount of emotional harm inflicted will likely correspond to the severity of the conduct depicted."

Here, we are faced with a depiction of an act that was performed on an adult female which is objectively not sadistic. The fact that the act, itself, is not objectively sadistic, and was not actually performed on a child, is sufficiently attenuated to take it outside of the reach of this Court's prior holdings and the cases cited by Probation. Here, the harm that Probation imagines is just too attenuated, based on a series of suppositions that turn out to be false (*e.g.,* "and had the eleven-year-old minor been subjected to such conduct, it would have been painful"). The imposition of this enhancement is thus procedurally unreasonable.

### c. The Sentence Is Procedurally Unreasonable Because the District Erred in Assessing an Additional Two Points Under U.S.S.G. § 3C1.1

Finally, Probation added an additional two points under U.S.S.G. §3C1.1 for obstruction of justice, contending that Mr. Hotaling ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

38



. (PSR ¶54.) Specifically, and as set out in the PSR,

(PSR ¶43.) Probation explained

(*Id.*)

Under Application Note 1 to U.S.S.G. §3C1.1, the adjustment "applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, *and* (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant." (Emphasis added.)

---

9 Kirstin Shoemaker is one of Mr. Hotaling's daughters.

39

Here, the obstructive conduct took place on or about October 6, 2020. Mr. Hotaling was not indicted in the instant case until August 3, 2021, nearly one year later. The obstructive conduct, therefore, did NOT occur "with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction", as required by Application Note 1(A).

Application Note 1 anticipates some situations where "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline". These are situations where "the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." Yet here, Mr. Hotaling's conduct was not committed with the purpose of thwarting a subsequent criminal investigation beyond the investigation by Probation into his violation of the conditions of his supervised release. For these reasons, U.S.S.G. §3C1.1 does not apply, and the imposition of this enhancement was also procedurally unreasonable.

### d. The District Court Failed to Explain It's Chosen Sentence

Without the four points erroneously imposed under U.S.S.G. § 2G2.2(b)(4), and without the two points erroneously imposed under U.S.S.G. §3C1.1, Mr. Hotaling's correct offense level is 26. With a CHC of III, this results in a Guidelines range of 78-97 months, still substantially below the effective Guideline of 120 months as a result of the mandatory minimum.

While the Court stated that it would have imposed an 188-month sentence "regardless of the guideline range" (A243) and that it felt that such a sentence was "completely justified and necessary, sufficient, but not greater than necessary to meet the goals of sentencing outlined in 18 USC Section 3553(a)" (*Id.*), the court did not do the work required to explain why a sentence substantially above the Guidelines range was necessary, rendering the sentence procedurally unreasonable and requiring reversal.

## III.   THE DISTRICT COURT COMMITTED SUBSTANTIVE ERROR

Substantive review of sentences provides "a backstop for those few cases that, [even if] procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Rigas*, 583 F.3d at 123 (citation and footnote omitted). "Though the standard for finding substantive unreasonableness is high, this Court has not shied away from doing so when appropriate." *United States v. Singh*, 877 F.3d 107, 115-16 (2d Cir. 2017) *citing United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010); *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017). In short, the Court will set aside a district court's substantive determination only "in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*).

41

The advisory sentencing guidelines are subordinate to the mandatory provisions of 18 U.S.C. § 3553(a). Section 3553(a) states,

> The court shall impose *a sentence sufficient, but not greater than necessary,* to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -
>     (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>     (2) the need for the sentence imposed -
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a) (emphasis added).

The first sentence of § 3553(a) is referred to as the parsimony clause and is related to the rule of "lenity." *See, e.g., United States v. Samas*, 561 F.3d 108, 110 (2d Cir. 2009); *United States v. Blarek*, 7 F. Supp. 2d 192, 210 (E.D.N.Y.) (Weinstein, J.), *aff'd*, 166 F.3d 1202 (2d Cir. 1998).

In applying § 3553(a) and the parsimony clause,

> the court must look to "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar

conduct," 18 U.S.C. § 3553(a)(6), and the Guidelines
themselves, 18 U.S.C. § 3553(a)(5).

*United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. 2010).

"In conducting this review, a district court needs to be mindful of the fact
that it is 'emphatically clear' that the 'Guidelines are guidelines - that is, they are
truly advisory.'" *Id*. (*quoting Cavera*, 550 F.3d at 189).

In this case, the district court imposed a sentence of 188 months, the high
end of what the court erroneously believed was the correct advisory guidelines
range.

As discussed above, the sentence imposed by the district court is
procedurally unreasonable as the district court improperly calculated the
guidelines. The district court's procedural errors, by which the court artificially
(and erroneously) inflated Mr. Hotaling's guidelines range from 57 to 71 months to
151 to 188 months, also render the 188-month sentence Mr. Hotaling received
unreasonably harsh and therefore substantively unreasonable.

Reversal is required.

## CONCLUSION

Accordingly, for the reasons set forth above, it is respectfully submitted that
this Court should issue an order:

a. vacating Mr. Hotaling's sentence and remanding this case to a different

district court for resentencing; and

b. ordering such other and further relief as this Court deems just and proper.

Dated:      Brooklyn, New York
             September 26, 2024


Sarah Kunstler, Esq.
*Attorney for Defendant-Appellant Hotaling*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in <u>14-Point Times New Roman</u> proportional font and contains 10058 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:        September 26, 2024
              Brooklyn, New York


Sarah Kunstler, Esq.
*Attorney for Defendant-Appellant Hotaling*